LOTTINGER, Judge.
This suit involves the involuntary liquidation of Baton Rouge Millwork, Inc.
For the purposes of our decision herein, we quote the written reasons of the Lower Court in toto:
“The present controversy springs from the liquidation of Baton Rouge Millwork, In *765 corporated. Walter McCann and Don Schmieder are the sole stockholders of the corporation, each one owning fifty per cent of the outstanding stock of the corporation. Clifford Fabre is the court appointed liquidator. Fabre now brings two rules to show cause directed to the stockholders. The object of the first rule is to require Schmieder to pay over to the liquidator the amount he owes as the successful bidder at an auction of the corporate assets. The second rule seeks to homologate an accounting of the receipts and disbursements of the corporation in liquidation. Because resolution of the second rule is somewhat necessary to the first, the rules will be discussed in reverse order by the Court.
Challenge to the accounting is made by the opposing stockholders primarily because of the failure of the liquidator to recognize their respective claims. Parenthetically, each vigorously opposes the claims of the opposing stockholder. Schmieder has framed his objections to the accounting in the form of a formal opposition filed in the record. He seeks reimbursement for, viz: a) insurance premiums paid by him for the benefit of the corporation; b) Christmas bonuses paid by him to employees of Baton Rouge Millwork ostensibly on its behalf; c) Christmas presents given to the employees of Baton Rouge Millwork; d) and e) wages paid to two persons employed for Baton Rouge Mill-work; and f) and g) the value of certain assets sold at the auction which were allegedly owned by the respondent Schmieder. McCann’s opposition to the accounting is essentially founded on a claim for wages evidenced by Suit No. 152,268, entitled “Walter L. McCann v. Baton Rouge Mill-work in Liquidation” on the docket of the 19th Judicial District Court.
According to documents filed in the record, Schmieder and McCann formed a business relationship in February of 1965 and it appears thereafter they continued to run the business in an amicable manner until the Fall of 1970. McCann was the President of the corporation, a member of the board of directors and general manager of the corporation. It appears that he managed the operation of the plant and most of the major activities of the business on a day-to-day basis. Schmieder, on the other hand, supervised the bookkeeping and financial end of the operation, and while he generally attended the plant on a regular basis, he did not spend the same amount of time as did McCann. Despite some difference in their respective duties and assignments, nevertheless, on policy making matters, both had an equal voice in the decisions. Apparently, some differences arose between the two and finally culminated on September 20, 1970, when McCann presented his regular monthly payroll check to Schmieder for his joint signature and Schmieder refused to sign it. From that time on, the two parties quarreled to such extent that there was an absolute breakdown of communications between them. In this atmosphere, the partners operated the business in an autonomous manner from each other until the court appointed a liquidator.
With the previous discussion in mind, it is apparent that the most important consideration in this case is the fact that after September of 1970, this corporation had no unified management capable of successfully maintaining its operations. Both Mc-Cann and Schmieder agreed on one point in their testimony and that was that they were unable to agree on anything. This divisiveness prevented any corporate decisions from being made and it is surprising that the business was able to continue for a brief time despite its divided management and inability to achieve any unified corporate action. Consequently, the governing factors in the Court’s opinion in resolving the validity of the claims of the respective stockholders are whether or not the expenditure incurred by the stockholder was: 1) for the benefit of the corporation and 2) consistent with previous customs and practices of the corporation. With *766 this criteria in mind, the Court will assess each of the claims presented.

Schmieder’s claims

a) Insurance premiums in the amount of $1,500.00.
It appears that in March of 1971, Schmieder had insurance coverage issued by-Wright Agency on several phases of the Baton Rouge Millwork operation as well as of its assets. He issued a check on one of his accounts to pay the premiums. Correspondence filed in the record shows that he gave McCann notice of his intention of taking this action. McCann testified that originally he wished to take out insurance and called a board meeting for that purpose in December of 1970, hut that Schmieder opposed his proposal. It seems that at- one time or another both men desired to have the activities of the business covered by insurance, but were not in accord with the suggestion if it was advanced by the other partner. There can be no question but that the corporation received the benefit from the issuance of the insurance and it seems to the Court especially desirable that there be coverage at this time of discord between the partners. Accordingly, the Court is of the opinion that Schmieder’s claim for reimbursement is a legitimate claim and should be included in the accounting of the liquidator.
b) and c) Christmas bonuses and presents for employees
The disagreement between Schmieder and McCann on the issue of giving their employees Christmas bonuses was childish to say the least. It had been the custom and habit of the firm for years to give each employee a bonus depending upon their service with the company together with a gift which was usually a ham or something of a similar nature. Without consulting with McCann, Schmieder issued his personal check to each employee which was to represent the bonus which the employee would normally receive from Baton Rouge Millwork. The employee was told by Schmieder that he, Schmieder, would expect reimbursement if and when the bonuses were paid. Subsequently, at a gathering of the employees before Christmas, Mc-Cann told the employees that he was in accord with the bonuses, but that he felt that it was improper for Schmieder to try and get the “glory of it”. In the Court’s opinion, the bonuses and the gift of the hams to the employees was a customary undertaking of the firm, was made for its benefit and only the manner in which it was handled is subject to censure. The Court therefore, approves Schmieder’s claim for reimbursement to the extent of $1,900.00 for bonuses paid to the employees and for $183.24 paid to Pelican Provision for the hams given to the employees.
d) and e) Payments to persons for work done for Baton Rouge Millwork.
On March 2, 1971, Schmieder issued his check in the amount of $205.00 to Miss Cookie Hutchison who he had hired to punch computer cards in connection with claims for unpaid sales taxes of the City of Baton Rouge and the State of Louisiana against the Baton Rouge Millwork. Un-doubtably, Miss Hutchison’s services inured to the benefit of the corporation and Schmieder’s claim in this regard should be honored. In addition, it appears that Baton Rouge Millwork had need of carpentry work which was performed by Walter Gass during this period. Schmieder issued his own check to Gass in the sum of $53.00 in payment of these services and Schmieder’s claim for reimbursement in this amount is recognized.
f) and g) Sales price of Schmieder’s properties.
Schmieder claims he was the owner of certain items of property which were attached to the building leased to Baton Rouge Mill-work and which were sold at the auction *767 of the assets of the company. The items and their value áre listed as follows:
Item No. (4) Riznor Overhead heater ($500.00)
Item No. (184) Suspended heater in lum-bershed ($300.00)
Item No. (195) Overhead Fan ($100.00) Item No. (212) Fan ($100.00)
Item No. (213) Heater ($300.00)
Item No. (214) Fan ($200.00)
Item No. (216) Fan ($100.00)
Item No. (12) Glue Machine ($25.00)
He seeks recovery equal to the amount which each item was bid at the auction. The sale and lease of certain assets from him to Baton Rouge Millwork (Exhibit S-32) fail to specifically describe any of the items described in the process verbal of the auctioneer. Schmieder testified that the equipment was installed by him on the premises before it was leased to the Baton Rouge Millwork. McCann acknowledged that the equipment was there when he became associated with the firm. Consequently, it appears that the items described did, in fact, belong to and were owned by Schmieder. While McCann questions the validity of the bidding and Fabre testified that he felt some of the equipment was not worth one-half of the bid price, nevertheless it appears to the Court, that in the absence of collusion being proven — which has not been done — a bid at public auction is one of the better indications of a fair market value for equipment. Therefore, Schmieder’s claim for $1,625.00 for the value of his equipment sold at the auction and realized as proceeds from the auction is recognized.
The Court, accordingly, amends the account proposed by the liquidator to reflect that Schmieder is due $5,466.24 for reimbursement of the above described claims.
McCann has made a claim for salary which he alleges is owed him. McCann was hired by the corporation in the capacity of general manager. The term of the contract was from April, 1965, to April, 1970. However, the evidence shows that McCann continued in this capacity and performed duties incident to this position until April, 1971, when the court began liquidation proceedings. The evidence indicates, though, that in September, 1970, Schmieder informed McCann that he considered his employment as general manager terminated and refused to sign McCann’s salary check thereafter. McCann is therefore suing for $6,875.00, representing salary from October 20, 1970 to April 5, 1971.
It is clear that when employment continues beyond the term originally contracted for it is continued for an indefinite period, terminable at the will of either party. Russell v. White Oil Corporation, 162 La. 9, 110 So. 70. Consequently, there can be no question but that either party to the contract of employment had the right at any time to terminate the employment. However, it does not appear from the evidence that either party ever terminated it.
Certainly, Schmieder attempted to terminate it, but he was not a party to contract and had no authority to do so. The only parties were the corporation as employer and McCann as employee. McCann did not terminate because he continued fulfilling the duties of general manager until the corporation went into liquidation. There is no evidence that the corporation ever took official action to terminate the employment either.
The jurisprudence cited by Schmieder is correct, but inapplicable to the facts at hand. The general rule may very well be that normally officer-shareholders of a corporation have other motives besides salaries in executing the duties of their office. Consequently, unless otherwise indicated, compensation for such services are not presumed. However, it is perfectly clear that McCann did expect compensation for his services. Salary was expressly' provided for by contract from 1965 to 1970 and continued thereafter for five months by the tacit consent of the parties.
*768 But, be that as it may, Schmieder had no authority to terminate McCann by his own individual action and without corporate sanction. He was not a party to the contract. Therefore, in view of the testimony to the effect that McCann had pursued the same duties during the period of October 20, 1970 to April 5, 1971, the Court is of the conviction he should be entitled to compensation for this time consistent with his previous emoluments.
The only other item listed in the proposed accounting which is the subject of serious controversy is the “claim of Mrs. Gloria Moorman of $820.00”. Mrs. Moorman had worked as a bookkeeper for Baton Rouge Millwork for about a year prior to the dispute between McCann and Schmieder. It appears that neither were completely satisfied with her services, but when McCann wrote her a letter of termination, Schmieder countermanded this action on McCann’s part and told her she was being retained. She continued performing essentially the same duties thereafter until May, 1971, when she voluntarily resigned from the firm. Schmieder personally paid her during this period with a general understanding that she would reimburse him when and if she was paid by the corporation. She testified on the trial of the case that she had no claim for wages against Baton Rouge Millwork and her only claim against the company would be for withholding and social security in the event these were not paid on the salary received by her.
In the Court’s opinion, the same general considerations determining the validity of Schmieder’s other claims should be controlling in this instance. Nevertheless, Mrs. Moorman stated unequivocably that nothing is owed to her by Baton Rouge Mill-work and in view of the fact that Schmieder did not plead such a claim (although he did submit evidence in support thereof), the Court declares that the claim of Mrs. Moorman should be deleted from the account.
In summation, the Court finds that Don Schmieder is due the sum of $5,466.24 from Baton Rouge Millwork in Liquidation for the above claims recognized by the Court and this amount should be included in the accounting as a liability of the corporation. Of course, since Schmieder owes $26,317.50 for purchase of assets at the auction, the actual amount due by him, after applying credit for his claims, is the sum of $20,851.26.
The liquidator has submitted proposed disbursements to the attorneys who have participated in this litigation on behalf of the corporation. These amounts are described as follows:
Ashton Stewart .$6,000.00
James S. Holliday, Jr.$6,000.00 (McCollister, Belcher,
McCleary & Fazio) William Brown .$1,140.00
The Court is of the opinion that until October, 1972, when Brown was retained by the liquidator, Stewart, and McCleary and Holliday of the firm of McCollister, Belch-er, McCleary & Fazio, actively were engaged in providing legal services in connection with the liquidation of Baton Rouge Millwork and should be paid for the value of their legal services until that date. The Court finds that the amount provided by the liquidator for these attorney fees is fair, proper and reasonable and accordingly, hereby fixes the fees in the amounts described. There can be no question that Stewart and Holliday are entitled to additional fees in excess of the amounts fixed, but these fees should be paid by their respective clients as the services after October of 1971 were essentially performed on behalf of their clients and not for the benefit of the liquidator.
The rule, requesting homologation of the accounting submitted by the liquidator, Clifford Fabre, is made absolute, and the accounting submitted by the liquidator, Clifford Fabre, is approved, subject to the additions and deletions described hereto *769 fore. The accounting, shown as follows: as amended is

Finally, the remaining question before the Court addresses itself to the motion of the liquidator requiring Schmieder to pay the amount of $26,317.50. As discussed before, the actual amount now due, after subtraction of the sum recognized by the Court as due him by the corporation is $20,851.26. As noted by counsel for Schmieder in his Opposition to the Rule, there was stipulation entered into between the parties regarding payment of purchases of assets at the auction by the respective parties. This stipulation provides, inter alia:
“that either party can purchase at any time even at the public sale without having to put up any cash up to $50,000.00, of course, it being well understood that * * if the purchase is more than his 50% and at the distribution and after payment of all debts he will then owe that as a debt to the liquidator.”
However, it is readily apparent that unless Schmieder does pay the balance due by him, the liquidator will be unable to pay the outstanding obligations as set forth in the accounting and those which have been approved herein. It appears that even with the payment of this amount, only the small sum of $3,237.37 will be available for contingencies. Therefore, in this respect the rule requiring the payment of the sum by Schmieder is made absolute to the extent that Don Schmieder is ordered to pay over to the liquidator within ten days from date the sum of $20,851.26.
Judgment will be signed accordingly.”
It is strongly contended by appellant, Schmieder, that the services of McCann as general manager of the corporation were terminated on April 15, 1970 at an alleged meeting of the Board of Directors. Both McCann and Schmieder were present at this meeting and although Schmieder wanted to dismiss McCann’s services McCann objected. A contract for the services of McCann as general manager for a term of five years was entered unto on April 15, 1965. McCann stayed on after this five year period and continued in his capacity after the dispute thereof between the shareholders and directors.
In Russel v. White Oil Corporation, 162 La. 9, 110 So. 70 the Supreme Court said:
“. . .At the end of the period thus contemplated, or even actually contracted for, the employment then continues for an indefinite period, unless expressly renewed for another period, or unless the custom in such employment be for fixed time.” (110 So. 70, 71, Emphasis Supplied)
At the meeting at which Schmieder claims the services of McCann were terminated, there was a 50% vote in favor thereof and 50% against. Thus, there was no action taken by the Board and the services of McCann continued. Schmieder contends that under the provisions of R.S. 12:84 McCann was not eligible to vote as a director to hire himself. Said statute only renders contracts between directors or officers as void or voidable under certain conditions and one of the exceptions is when the material facts as to the interest of the officer or director is disclosed or known by the directors.
*770 Schmieder also contends under the provisions of R.S. 12:82 subd. C that the election or appointment of an officer shall not of itself create contract rights and that the general rule as stated in 19 C.J.S. Corporations § 803, page 190 provides:
“ * * * officer of a corporation presumptively serves without compensation; he is entitled to compensation for performing the usual and ordinary duties of his office when and only when there is a valid express agreement therefor; * * *»
In the contract of employment commencing April IS, 1965, McCann was engaged to serve as general manager of the corporation, which position is not always synonymous with that of an officer or director. The evidence reflects that McCann served full time with the company and certainly it could not be determined that he should serve without pay.
 We are in accord with the written reasons of the Lower Court on all other items except the rejection of payment of wages to Mrs Moorman in the sum of $820.00. The liquidator’s report listed such an item. The testimony of both Mrs. Moorman and Mr. Schmieder was to the effect that he had advanced her salary with the understanding that when she would be paid he would be reimbursed. The record discloses that she was an employee of the company and was not fired. For the same reasons as given by the Lower Court as to McCann, she is entitled to receive from the company her wages, less social security and withholding.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to include in the items for payment, the claim of Mrs. Moorman in the sum of $820.00, less withholding and social security taxes, and, as so amended, the judgment of the Lower Court will be affirmed.
Judgment amended and affirmed.